Board, Mr. Lowery, when you're ready. May it please the Court, Kevin Leary of Chapman Pepper Lock, on behalf of Plaintiff Appellant TMX Finance Corporate Services, TMX FCS is a company in Texas that performs most of its operations in Carrollton, Texas, yet it's now the object of extraordinary and unconstitutional assertion of extraterritorial power by the Secretary of Pennsylvania's Department of Banking and Securities. So specifically, the Secretary has targeted TMX FCS with an invasive 2024 subpoena, ordering it to produce information about its business activities in Texas, not in Pennsylvania, since August of 2017. The Secretary has also issued her order to show cause order, purporting to cause TMX to defend itself in Pennsylvania, to show why it's not liable for violations of Pennsylvania's usury laws, based on lending activities that took place before TMX FCS had ever engaged in any business activities, and indeed, TMX FCS is not itself a lender. So we have powerful constitutional arguments for why the Secretary cannot force TMX FCS to comply with the 2024 subpoena, and most notably, under the Due Process Clause, a powerful personal jurisdiction arguments, and Dormant Commerce Clause arguments, both of which would mean that the Secretary can't force us into Pennsylvania to defend ourselves against these allegations and respond to the subpoena. And now, most relevant to this appeal, we have the right to raise these constitutional arguments in federal court in the Northern District of Texas, which is our home district federal district court, given that court's virtually unflagging obligation to exercise its jurisdiction to hear federal claims. Now, in the Secretary's view, which the district court endorsed below, the Younger Abstention Doctrine requires TMX FCS to bring our important federal challenges through Pennsylvania's administrative proceedings, through Pennsylvania's state court, rather than in our home federal district court. So this means that, under the Secretary's view of Younger, she can issue subpoenas to anyone, anywhere in the country, seeking information about out-of-state activities with no connection to Pennsylvania, and the only way those subpoena recipients can challenge those pieces of paper is in Pennsylvania, through state administrative proceedings, through state courts thereafter, and not simply in their home federal district court. So that's an incredibly expansive view of Younger, and we respectfully submit that's incorrect. Now, I'd like to focus, we have three specific kinds of challenges here. We're challenging the 2024 subpoena, we're challenging future enforcement actions that would rely upon an extraterritoriality theory, and we're also challenging the order to show cause hearing. But I'd like to focus on the 2024 subpoena, and then our attempts to stop any future enforcement actions. Those clearly do not implicate any... Actually though, so in the record we'll find that you moved to quash the 2017 subpoena? So the 2017 subpoena was not issued to TMX FCS, because that was before we had engaged in any business operations. So we, respectfully submit, are not implicated in that one. The 2024 subpoena... But you assisted in gathering material responsive to the 2017 subpoena? So in the record, so TMX FCS, we provide certain back office services... Just the answer, did you assist in providing responsive material? We assisted in our affiliates responding to the 2017 subpoena. Okay, and you could have moved to quash that and said this is oppressive, we aren't a lender, we have no connection to you, no personal connection, there's nothing stopping you from moving to quash any subpoena to you, 2017 or 2024. Why can't you just move to quash it? So for the 2017 subpoena, there was no need for TMX FCS to quash it, because it was seeking things that we didn't engage in. But it's assisting, so even more you're saying, yeah, we do have some of the items, we're assisting. Okay, so we assisted our affiliates in responding to it. The affiliates did challenge, or we objected to the subpoena, the secretary filed an enforcement proceeding in Pennsylvania State Court, and the affiliates challenged that. So that's as to the 2017 subpoena. The 2024 subpoena, we've objected to it, and they can enforce it at any time. And now it's based on, it's similar to the... When you say you've objected to it, the objections are in federal courts all over the country, but have you filed a motion to quash in the Pennsylvania administrative system? We have not filed a motion to quash in the Pennsylvania State Court. What we've said is we've objected to the secretary to respond to the 2024 subpoena. But I think the important thing here, we are here on a younger dismissal. So below we have a complaint, we have a motion to dismiss, and we have the two motions for judicial... But Pennsylvania's trying to enforce their usury laws. And those have criminal possible sanctions. You're saying you just got the wrong guy. We're down in Texas, we have nothing to do with any of this. So why not file a motion to quash, which Pennsylvania courts can give you full and fair assessment of, and then you can litigate that up? And if you need to, you jump into federal court at the end of the game. But why... What allows you to step in and say to a state trying to enforce its consumer protection laws, we're just gonna go right to a whole bunch of federal courts around the country. We're not even gonna move to quash something that we think has got the wrong person, would therefore be oppressive for us. So two responses to that. So the first response is, whether the availability to file a motion to quash with the Pennsylvania state court system. We have the right to enforce, to assert our federal constitutional claims as to this extraterritorial assertion. You do. Do the related entities do business in Pennsylvania? So that's being disputed in the order to show cause. So our position, this is in the complaint. The related entities, they do not do business in Pennsylvania. So this is taking from our complaint. What has been asserted here is that certain residents or certain people who had since moved into Pennsylvania, had left Pennsylvania and taken a loan from these affiliates and may have moved back into Pennsylvania. So they had vehicles in Pennsylvania that were subject to title loans and were the loans enforced in Pennsylvania? So there were, there are, this is alleged in the complaint, things like impounding vehicles and the ordinary courses of the remedies to, uh, yeah, repossessions and whatnot. Yeah, that's right. So that's in the complaint. So that is the affiliates. Well, so that, yes, but I'm just back to Judge Higginson's question, if, um, I guess it's not really the parent, TMXFCS, if they're assisting and complying and they perform back office, um, support for the entities and the entities are doing things in Pennsylvania, how then would you not be subject to the jurisdiction of the Pennsylvania authorities? I mean, you'd have, you'd have, I guess, um, personal jurisdiction to be sued in Pennsylvania, would you not? So I want to be very clear here. The allegations in the complaint and this 2017 subpoena and the order to show cause are related to, to activities from 2008 to 2017. That is before TMXFCS engaged in any business activities. So we were not involved in any of those. So I was answering your honor's question of have the affiliates, you know, were there business activities, whatever. Uh, I was answering the question of that in the complaint we've had said residents in Pennsylvania had left Pennsylvania and gotten loans from affiliates outside of the state. And that is the basis of these, the order to show cause. That was in the period of 2008 to 2017 before TMXFCS, the only entity before the court here engaged in any business activities. So we were not involved in any of that. So if entities are doing business in a jurisdiction and, uh, before a time certain, 2017, and so then they decide to form a new entity and fold all those operations. And I know that's not what is happening here, but fold all those operations into a new entity. That new entity is immune from any kind of enforcement activity or investigation or anything like that. So certainly there are tools like piercing the corporate veil that could be used to engage in something of that. That is not what we have here. There are no allegations of that. Well, but beyond piercing the veil, I mean, nobody's saying that the entities are illegitimate or alter egos or anything like that necessarily. It just, it seems implausible to me, your theory of, well, we didn't even exist until, until 2017 or after, after all this activity is alleged, but your, your affiliates did and they're doing business and now the company that's the subject, um, FCS is supporting those affiliates. I mean, it just, again, back to Judge Higginson's question, if you're so disconnected from it, why aren't you moving to quash the subpoena and shut down the investigation? So here's, I think the fundamental point here, we asserted federal constitutional claims against the secretary's activity in our home federal district court and the district court dismissed that based on Younger. Younger only applies when you have a parallel state proceeding that falls within the categories that Younger has. An ongoing, here it would be a quasi criminal proceeding would be the only plausible category. As to the, we have three categories of challenges, 2024 subpoena, the order to show cause, future enforcement activities. As to the 2024 subpoena and the future enforcement activities, Younger cannot possibly apply because there is no ongoing quasi criminal proceedings. The subpoena is not a quasi criminal proceedings. It's an investigatory tool. The future proceedings that we're trying to enjoin, they're not going on. So as to Younger, Younger cannot apply. That is the only. We're going to have a plethora of federal suits all over the country or maybe all over the circuit preempting other states from proceeding to investigate or protect or enforce their own laws because their future, so therefore Younger doesn't apply. We can preemptively assert constitutional claims. Well, so certainly there are other doctrines. I'm just struggling to find the line here that doesn't just open, throw open state enforcement and state police power into chaos subject to federal preemption. So I think it's very important that Younger itself is an exceptional doctrine, incredibly narrow. The idea is that parallel proceedings in state and federal court are the norm. Younger is not the floodgate that exists to prevent the flood that your honor is, is referencing. What application of Middlesex in spirit, what circuit level application would say this Pennsylvania effort to enforce its usury laws isn't a spirit investigation that could trigger Younger. Did you say a spirit investigation? Spirit Middlesex, the line of authority applying. You're saying this, whatever Pennsylvania is trying to enforce doesn't qualify under Younger. Right. What's your best authority for that? I think this court's decision in Google. But Google, and I know Google well because I wrote it, Google, we didn't reach Younger. Google said, we said there was no, it wasn't right, therefore no jurisdiction. So I read Google a little bit different in respect. Well, that's fair. Good. Yeah. You said Younger doesn't apply. And then you did dismiss it on ripeness. So now here though, that's because it just been a subpoena. There was no protect that the agencies, this, this litigation is now years underway. So I want to be very clear, the 2024 subpoena, that is an investigative investigatory tool that is out there. That is the thing that we are, we have three challenges, 2024 subpoena, order to show cause, future enforcement proceedings. And I'm focusing the court's attention here on the 2024 subpoena, the future enforcement proceedings that Younger cannot possibly apply. And I think that was the holding of Google as to the Younger, as to the Younger component, that it is an investigatory tool. It is not a quasi criminal proceeding that triggers Younger. Now, that gets, Google gets us out of the Younger frying pan and now arguably we're in the ripeness fire. But I don't think we're in the ripeness fire here. One, I would just note that there was a one sentence argument on ripeness and ripeness is a, and my friend's answering brief as to the 2024 subpoena and ripeness of course is a very fact intensive kind of situation. However, there's other, it's important that we know the secretary is to the high degree of likelihood is going to enforce the subpoena against us because we had the 2017 subpoena. We have the order to show cause. In the order to show cause, there was an effort to have another subpoena against us. So they are raring to go against us. So I think Google is the authority I'd like to stand on on this. It gets us. For your third basket, you're saying, am I, am I oversimplifying it? You're saying actually there's not one steady investigation by Pennsylvania into its consumer protection. There is a discrete third one under the 2024 subpoena has nothing to do with the others that are being litigated. I'm not saying it has nothing to do with the others in the sense that it is looking at the same kind of conduct, but it's the time periods are delineated that there's the first one is just based on this, the 2017 subpoena that's in the briefing. Over and done with. They've, they've done the sanctions. It's finished. No, no, no, no, no, no. So the 2017 subpoena gave rise to the order to show cause. That's ongoing now. That is for the period of 2007 to, excuse me, 2008 to 2017. This 2024 subpoena picks up and says, well, now we're going to investigate 2017 activities from 2017 forward. If they wanted to bring charges based on that, based on documents they received from that, that would be a new proceeding. That has not happened. This is just state police powers doing what they do. They get an original subpoena for a discrete period that they have information supporting the good cause for the subpoena. Then they get more and they think, oh, we're going to enlarge the time period that we're looking at. That's just one ongoing investigation now more and more developed. No, I, so I vigorously disagree with that because they are, they are doing the order to show cause. Now it's literally occurring as we speak in, in Pennsylvania as to that period, the 2007, excuse me, 2008 to 2017. If they wanted to bring more charges against us, it would be an entirely separate proceeding in the future. Now it would, it would be based on presumably things they received from the 2024 subpoena. That is an investigatory tool. We are. Your time's up. Do you want to respond? Where did the South Carolina and the Pennsylvania district courts go wrong when they dismissed applying younger? Same, same argument you're making to us. So similar. So again, those are different affiliates of TMX FCS. Now some of the affiliates in those cases did engage in lending activity. TMX FCS is not a lender. We do not engage in any lending activity. We didn't have any business operations. So whatever your honors thinks about those other cases, we have very powerful arguments that are distinct factual arguments, but are you saying they're flawed in their application of younger? Because it's the same underlying state investigation that is triggering comedy younger. So if you're agreeing that the legal regime was properly applied, then what I'm hearing is your argument just reduces to the factual proposition that you have nothing to do with anything being loans being given to Pennsylvania residents. You're going to be able to avoid any harm if that's true. So that's, so there's a factual distinction and then the legal arguments are the same arguments here. They are not respecting that the 2024 challenge is separate. Okay. So it is the same legal. You're saying both those are flawed. Yes. Because again, 2024 subpoena, it's not a quasi criminal proceeding. That's an investigatory tool. Younger can't possibly apply our, our arguments for the future enforcement challenges to future enforcement proceedings. Those can't be possibly ongoing. And now we do have arguments as to the order to show cause. So I just, right. And we, you know, we, I can, I certainly can get to them, but I get wanted to focus the court's attention on those two categories because there's a practical reality. The order to show cause is ongoing. The, the, the most value we can get from this litigation is you have those two other forms of relief that I was talking about. So that's what I'm really focusing the court on here. We had a dismissal below from the district court and with all due respect, it did not appreciate that we have three separate challenges that younger, we don't think younger applies to any of them to be entirely clear, but the younger arguments have to be analyzed as to each. And with respect, the district court did not do that. You can read the district court's opinion. He does not carefully go through and explain how a 2024 subpoena could possibly be a quasi criminal proceeding. Where's your best younger case that parses the different theories or the different claims like that? I mean, that may be why the district court didn't do it is, is basically it saw an ongoing investigative or administrative proceeding and said, I'm going to abstain. So I think that's certainly inherent in the doctrine of younger. I think Google, I would. Inherent in the doctrine of younger. What case says it? Right. So I think Google does a similar kind of analysis and is looking through, I mean, so for example, in Google, you talk about the investigative investigatory subpoena, you say younger doesn't apply. That's helpful for us. You would dismiss on ripeness. I think we've distinguished that here, but that we'd have to have jurors. The ruling there was there's no federal jurisdiction because the case isn't right. We wouldn't ever get to younger. So in the U.S. Supreme court, but no answer. So Google says, uh, the subpoena younger doesn't apply or they're wrong on younger. Uh, they dismiss on ripeness. And then you also go through and you explain, you analyze the, uh, a future in injunction as to future enforcement proceedings as to the AG in Google. Now you, you overturn the answer to judge Wilson's question has to go claim by claim is your best authority is ours. 10 years ago. Google versus hood. Yeah. I think Google goes through and I, yeah, I was sure I can say that's my best authority. I just want to say that I think this is inherent in the idea of the doctrine. I think the cases go, you go through claim by claim because you have a virtually unflagging obligation to assert jurisdiction. Younger only applies when the relief you're seeking would disrupt an ongoing quasi criminal. In order to abstain, a federal court has to conclude it's got jurisdiction. How could you not agree with that? Okay. Yes. So in order, and I see Google versus hood, the court said, we don't have jurisdiction. This is premature. There is discussion about spirit and middle sex and younger, but the ruling is no jurisdiction. Go back and move to quash in Mississippi. So I have an answer, right? So in the Supreme Court's decision in Sinochem, the court is allowed to address different jurisdictional obstacles in the order that it prefers younger. In order to abstain, you have to have jurisdiction over the claim, but younger is this jurisdictional kind of doctrine. So you do get to address either one of them. So I think Google is saying, Hey, younger doesn't apply. And I think that's a holding. I think you can apply it here and in fact have to, or should apply it here. And then they just miss on ripeness. Now I don't think the ripeness decision applies to our case because of all of the facts showing that they are raring to go on the 2024 subpoena. Thank you very much. Good morning, Your Honors. My name is Michael Pratt, and I represent Wendy Speicher in her official capacity as Secretary of the Pennsylvania Department of Banking and Securities. And Your Honors, I was, in fact, I'm going to redo my argument a little bit because I do want to respond to a couple of points that, to be clear. The appellants now are saying that Texas is their home base. So to be clear, they are incorporated in Delaware, and their principal place of business, along with many of these other affiliates, is Georgia, not Texas. Now, they have changed their principal place of business over the last few months, but at the time that we're discussing, it was Georgia. Second, with respect to the 2024 subpoena, there's been a lot of discussion here about Google v. Hood. Google v. Hood, I thought, was pretty clear that the Attorney General tried to, was issued a non-self-executing subpoena. As a clear matter, that was not right. That was what the court ruled in Google v. Hood. It has not been enforced here. It's been over a year. It's not been enforced. It's not clear it's ever going to be enforced. Once it's enforced, then, as they did with the 2017 subpoena, maybe they can go into federal court, and they can seek to raise some constitutional defenses. That's what happened in 2017, and took that litigation for six years before the department was able to see any documents whatsoever from that investigation. Well, do you agree with the distinction opposing counsel just made between the other cases that have gone against him and this particular case? Is the distinction that this company, uniquely this affiliate, this whatever, is uniquely not a lender, as opposed to those involved in the other cases? No, Your Honor. Is that right factually, and if it is, what's the legal effect of that? Factually, Your Honor, that goes to the merits of the case. If they want to, after an investigation, this department, six years reviewing documents, after this party was formed, they concluded that they had a basis upon which they could find this particular plaintiff liable for a violation of the usury laws, and whether or not they're liable or not is a merits issue. It goes to the factual basis. They can go into state court, and they can argue that we are not liable, we weren't a lender, or we are not liable because we're not successor in interest or under a veil-piercing argument, if that's what they choose to do. But the question is the form upon which they need to do that, and that would be the state proceeding, which is ongoing. So Your Honor, and I think that if we get to the, if we go, I mean, the gist of their argument through their briefs and through their trying to get to before you, is that somehow that this administrative proceeding was not quasi-criminal in nature because it did not apply the Supreme Court's sprint factors. And the fact is, Your Honor, that the record is clear. In fact, the record is overwhelming that this particular administrative proceeding is a quasi-criminal proceeding and meets that under every element of younger, of middle sex, and of sprint. And in fact, Your Honor, I think they're trying to apply it too broadly. Because if you, sprint doesn't say, all it says is that it wasn't a new expansion of younger, all it said is younger and all of the, its progeny stand for this proposition. It has to be a quasi-judicial, it has to be an administrative, a civil proceeding which is akin to a criminal, a quasi-criminal. It is quasi-criminal in most respects. And that's it. Now, with the exception of, clearly it has to be initiated by the states, it has to be sanctioned, they have to allege that they are sanctioning a party for wrongful conduct, all of which is here. But otherwise, Your Honor, all it, there's no checklist. It doesn't say that X has to be done or Y has to be done. In fact, Your Honor, it never says, and there's no case they can cite which says, that the party who, the party must be named in the administrative, in the investigative subpoena. There is no such. The question is generically, does this proceed, is this proceeding quasi-criminal? And it meets every criteria for that. Not only was it initiated by the state, it is seeking to, it is seeking to hold fine this, this, this. Are there, there are criminal sanctions for usury? And there are criminal sanctions for usury in Pennsylvania. So it meets. In Sprint, what was the underlying state? The underlying state, I, oh God, I can't remember, Your Honor, but I will say this, and in fact, I don't remember the state, oh, Iowa, Your Honor, it was Iowa. But I will say this about Sprint, because the facts are important. What, what Sprint dealt with and what they, the primary issue was that this, this whole, that whole administrative matter was started by two private entities. It wasn't initiated by the state. And that, and so it wasn't, the state wasn't seeking sanctions, so it wasn't a quasi-criminal. That was what they were focused on. Yes, it mentioned in passing that, well, here are some other reasons why it's not quasi-criminal. But the fact is that, the fact is that it was not, it was initiated by a private entity, not by the state, which has happened here. But here, Your Honor, not only were, but there was an investigation. There was an investigation. In fact, started in 2017, and, and there, these affiliates fought that subpoena for six years. Went to federal court, we went to commonwealth court, appellate court in Pennsylvania, and in 2023, they finally got some documents. And I want to clarify another thing, Your Honor, which I think one of you picked up on, is that this, when these documents were finally produced, the commonwealth court actually, when they finally entered an order to enforce the subpoena, said, they said, we would, I of these parties, that you are submitting these documents, that you've done a, a search, and you're verifying that these documents are true and correct. The person who submitted the declaration, as that corporate officer, was, was someone named Victor, Victoria Newman. Victoria Newman affirmed, I am the corporate officer. That's, that's in the record, Your Honor. And so, after that, after six years of trying to get documents and investigation, after six years, this department concluded it had a basis upon which not only to bring an order to show cause against the, the named parties to that original subpoena, but also to others, either based on, so that is, and that is an issue that you get to ultimately is, goes to the state proceeding. What they're asking you to do, basically, is go far beneath that. They want you to evaluate the, the, the complaint, what's been, the off, order to show cause, what's been, what's, what's been alleged. They want you to accept that they are, they're not a lender, but that doesn't mean, and even if you accept that, it doesn't mean they're not liable. It means that is for the state to decide, the state proceeding. The other thing I'll say real, real quickly, Your Honor, is that. We're just deciding the form. They want you to decide for the state. We're just deciding the form. Oh, you're just deciding form. That's all this is about. What is the proper form? And the proper form is Pennsylvania. They initiated it. What is the status of the litigation in Pennsylvania? The litigation, in fact, Your Honor, there have been, they, they finally answered, all the parties answered the order to show cause, I believe, in January of this year, after getting many extensions and filing all the federal court complaints, and preliminary, and seeking preliminary injunctions in every jurisdiction. And as you, as you recognize, at least all of those cases have been dismissed on extension grounds. But can the, can the defendants, can the targets of the investigation raise dispositive motions? Can they move to dismiss the proceeding? Can they raise their constitutional claims within the context of the proceeding? Well, two things, Your Honor, and two answers to your question. One, Younger just requires that they're, they can raise constitutional, their constitutional claims in their judicial review of those. But secondly, the general rules of, of administrative practice and procedure for Pennsylvania said that you can raise that, that, that issue. And they, in fact, they did raise that issue with the hearing examiner. They filed a motion to dismiss. The hearing examiner denied the motion. So, under the, under the rules of, under the rules, which our short version is BRAP, under the rules, they then can ask the hearing examiner to refer it to the commission, which is the ultimate adjudicatory body. But if they don't refer it, if she doesn't refer it, meaning that she sees no merit to it, then it doesn't go to the commission. So, you can raise it, but you also have an opportunity, what the courts have said, once the merit, once the commission enters a final order, those, those challenges on jurisdictional grounds can be heard on . . . Well, but that's a little bit, I guess, horse after cart, because if, if there's no jurisdiction over this entity, they've just got to drag through a multi-year investigation and go through a merits determination, and then they can say, dear court, there was no jurisdiction even to do this. And the court says, you're right. I mean, how do they, how are they made whole with that? Every other case I can think of, I guess, off the top of my head, jurisdictional arguments come first. But . . . And they can raise them first because they shouldn't even be here. And they . . . Was that illusory? No, Your Honor. They did raise them first. Number one. Well, but, but to have them adjudicate it, I mean, it's one thing to go and have judicial review after the fact, after you go . . . But, I mean, usually we, we, we decide jurisdiction first. Well, Your Honor, again, they, it's proposed . . . There was a proposed adjudication by the hearing, hearing, hearing examiner. And I also, I left out, there's so many ish things that have happened in the state proceeding, to answer your question, that they actually did appeal. They filed interlocutory review with the commission. They have now, um, filed a, an interlocutory appeal with the Commonwealth Court. They've taken the position that the commissions, the commission, uh, by operation of law, denied their interlocutory appeal. And they've now taken that to the Pennsylvania . . . So basically . . . Oh, it's, it's, it's there. You're before hearing officer. Right. Moved to dismiss. Hearing officer is supposed to wait till during or after the merits determination to rule on that. So, denied as premature or what have you, but it can be referred to the commission . . . If there's merit. If there's merit. Well, that's all in the hearing officer's . . . So, so it really can't be appealed to the commission except by the hearing officer, but constructively can it be? And then if it, if the commission doesn't act, it goes to a trial court? If the commission doesn't act within 30 days, uh, then it's deemed denied, which is the position they've taken. They didn't act for 60, I don't know, 60 days, 90 days. They have now filed an interlocutory appeal with the Pennsylvania Commonwealth Court that that, that particular motion was deemed denied, final, and therefore we would like the appellate court to consider.  Is that, that's all calendared? Briefed? Um, it's been briefed, Your Honor. It's fully briefed to my, my understanding. It's been fully briefed, uh, and it's before the Commonwealth Court. They haven't stayed pending this last . . . No. No, they haven't. They haven't, Your Honor. In fact, in fact, there'd been so many things filed here, they actually filed for a stay with the Commonwealth Court as well, which was denied. And as you know, they filed for a stay with this court, uh, with the Third Circuit, um, as well, trying to get stays and they were all denied. In Pennsylvania, could you, could a litigant that feels that, let's say they have a First Amendment right against what's being sought, so it really would be destroyed once and for all. Is there an opportunity for mandamus? Can you go right to state court and say, this, this subpoena is asking for material that's constitutionally protected? That's not their argument here, but . . . Uh, Your Honor, I, I wish I, I can't really, I don't know that for certain, but I don't think the rules permit that. I mean, they can always, again, there are so many rules, they could go and attempt it, but I think that that would be, uh, I don't think that, uh, the procedure of law of Pennsylvania will allow it. Thank you. Um, so, unless there, I will raise one, one other point, Your Honor, just so that, um, and they didn't raise this, but I know it's in the briefs, but there's been a lot of discussion about, uh, that there's no ongoing proceeding because Pennsylvania, this, uh, OSC was not served properly. Um, and, and they've raised it numerous times in both the federal courts and all of whom have rejected it, and they've raised it in the, uh, in the state court as well, which has rejected it as well. Um, and in fact, Your Honor, the, uh, the, the commonwealth, the, uh, department, um, does not concede. They, they follow the Pennsylvania rules of, of, um, administrative procedure. They served it properly. Um, and even if there was a minor technical deficiency, the very case that they've cited themselves called Ferraro makes it very clear that the Supreme Court says that we do not demand strict compliance with the rules of service. So, unless there are any other questions for me, Your Honor. Thank you for your statement, Your Honor.  Thank you. We'll hear from Mr. LaRoy. Thank you, Your Honors. A few quick points. First, framing point. We are here on a dismissal on younger abstention. That is the only order we have. Now, my friend, in his arguments, his only argument as to the 2024 subpoena sounded in ripeness. That's a completely different doctrine, not the basis for the dismissal. At the very minimum, what we should be entitled to here is a vacatur of the order and a remand where my friend can move to dismiss based on ripeness if he so chooses, and we can respond in due course and have full briefing on that. As yet, we have not had that. All we have is a younger dismissal as to the 2024 subpoena. That is clearly incorrect with respect to the district court. I didn't hear my friend make any arguments as to our seeking relief to future enforcement proceedings. He made no arguments at all. As to that, no younger cannot possibly apply. That again is just clearly incorrect with respect to the district court. So again, at a minimum, we're entitled to a vacatur and a remand, and future proceedings can go forward. My friend talked about the ongoing order to show cause, and Judge Wilson, you had asked about is it an adequate opportunity. So what we said here, there's no adequate opportunity for us to raise our personal jurisdiction defense in the ongoing Pennsylvania administrative proceedings, because we cannot get a final determination on whether Pennsylvania has personal jurisdiction before the merits proceedings have concluded. That puts, as Judge Wilson said, the car before the horse. So that is why there's no adequate opportunity. Now, just important framing. The adequate opportunity is going to our challenge to the order to show cause. Our challenge to the 2024 subpoena and the future enforcement is saying there's no ongoing proceeding, and I think that's just clearly correct. So that's where the adequate opportunity goes. Judge Higginson, you had asked about the proceedings in the Commonwealth Court where we're trying to challenge where the commission had said it's not properly before us. We can't address this, the personal jurisdiction, because it's not properly before us. We tried to challenge it in the Commonwealth Court. Briefing has concluded. Argument is scheduled for early November. There's a motion to move the argument. We'll see where that happens. So that's the status there. So in conclusion, let me just say, my friend's position results in this extraordinary assertion of state power, extraterritorial state power across the country. In my friend's view, the Secretary can issue a subpoena to anyone, anywhere in the country, be it in Texas, be it in Alaska, be it Hawaii, and the only way that you can challenge that subpoena is to go to Pennsylvania Administrative Proceedings, litigate through, litigate through the Pennsylvania State Courts, and the only federal court review thereafter would be discretionary review to the U.S. Supreme Court. So in my friend's view, the federal district courts are boxed out from hearing these extremely important personal jurisdiction constitutional-based arguments, and state administrative proceedings will be the primary adjudicators of these important rights. With all due respect, that's an incredibly expansive view of Younger that the U.S. Supreme Court expressly repudiated in Sprint. Thank you very much. Certainly some interesting Younger issues you have all presented to us. We will take the case on new advisement.